UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN VANWICKLER,

    Plaintiff,

v.                                                                   CASE NO.: 8:07-cv-142-T-MAP

MICHAEL J. ASTRUE
Commissioner of Social Security

    Defendant.
_____/

## **ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the Commissioner's decision denying disability insurance benefits. In summary, he claims the Administrative Law Judge ("ALJ") erred by 1) failing to accord proper weight to the treating doctor's opinions; 2) rejecting Plaintiff's complaints about nonexertional impairments, and 3) failing to obtain vocational expert testimony. After consideration, I find remand is necessary for the reasons set forth below.[1]

*A. Standard of Review*

To be entitled to disability insurance benefits a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic

---

[1] The parties consented to my jurisdiction (doc. 11). *See* 28 U.S.C. § 636(c).

techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his past relevant work. If the claimant cannot perform the tasks required or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do no other work in the national economy in view of his age, education, and work experience. A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137 (1987); 20 C.F.R. §§ 404.1520(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists. *See* 42 U.S.C. § 405(g); *Keeton v. Department of Health and Human Services*, 21 F.3d 1064 (11th Cir. 1994). The Court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Further the Commissioner's failure to apply the correct law, or to give the reviewing court sufficient

reasoning for determining that she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987) (remand for clarification).

### *B. Background*

Plaintiff, who was forty-four years old at his administrative hearing, has no past relevant work and a high school education. He describes himself as a "brittle diabetic," suffering from insulin dependent diabetes since age twelve. He is plagued by diabetes-related health problems too, including uncontrolled high blood pressure, diabetic neuropathy, diabetic peripheral vascular disease, and foot ulcers. Even while incarcerated for driving with a suspended license in 2000-2002, Plaintiff's diabetes and blood pressure remained largely uncontrolled, requiring hospitalization for a foot ulcer and cellulitis. After his release from jail, Plaintiff twice tried to hold down jobs at restaurants, but was fired both times when he could not regulate his blood sugar levels and passed out. He testified that he tries to regularly eat and take his medications, but he still experiences unstable blood sugar levels and high but controlled blood pressure. He says he was recently hospitalized for an insulin seizure and convulsions. He has trouble with neuropathy too, describing episodes where his hands and fingers go numb, cramp, and drop things. He testified that he tries to get out and walk and exercise a little each day, but can only walk about a block before his foot starts to hurt (doc. 342).

The ALJ opined the Plaintiff's limitations had little or no effect on the occupational base of unskilled light work. In considering Plaintiff's age, education, work experience, and ability to perform a wide range of light work, the ALJ applied Rule 303.20 of the Medical-Vocational

Guidelines and concluded Plaintiff was not disabled.[2]

*C. Discussion*

*1. treating and examining doctors*

Plaintiff argues the ALJ erred by assigning little weight to the opinions of Dr. Quililan, his treating physician. In finding Plaintiff not disabled, the ALJ discounted Dr. Quililan's opinions, finding them "unsupported by his own physical examination records" (R. 19). Review of Dr. Quililan's records, however, shows support for the doctor's opinions, requiring remand and reconsideration.

The Eleventh Circuit requires the Commissioner give a treating physician's testimony substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Indeed, the Commissioner's regulations dictate this preference:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.
>
> 20 CFR §§ 404.1527(d)(2) and 416.927(d)(2).

The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating

---

[2] The regulations define "light work" as: work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *See* 20 C.F.R. § 404.1567(b)

physician, and the failure to do so is reversible error. *Lewis* at 1440. The Eleventh Circuit has found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, where the evidence supported a contrary finding, or where the doctors' opinions were conclusory or inconsistent with their own medical records. *Lewis* at 1440 (citations omitted).

While the ALJ stated that Dr. Quililan's opinions were unsupported and that his physical examinations "were all normal," I find that more often than not the examinations indicated uncontrolled diabetes and markedly high blood pressure, validating Plaintiff's numerous diabetes-related complaints. On June 3, 2004, Dr. Quililan's records show Plaintiff complained of neuropathy and had blood pressure of 190/100 (R. 123). His lab work from May 17, 2004, confirms the diagnoses, revealing a glucose level of 162 (normal range is 65-110), a BUN level of 35 (normal range is 7-25), a creatinine level of 3.1 (normal range is .7-1.3), a total protein level of 5.8 (normal range is 6.0-8.3), an albumin level of 3.3 (normal range is 3.5-5.7), a hemoglobin level of 12.5 (normal range is 13.5-18.0), a hematocrit level of 37.5 (normal range 40-54), and a microalbumin level in urine of 113 (normal range .5-29) (R. 126-27). On July 31, 2004, and on September 1, 2004, Dr. Quililan's records show Plaintiff's diabetes was "uncontrolled" (R. 152- 53). Although Dr. Quililan's records from February 24, 2005 and November 3, 2005, indicate Plaintiff's blood sugar levels were controlled, his blood pressure certainly was not (214/112 and 198/98) (R. 150, 312).

Dr. Quililan completed a diabetes mellitus residual functional capacity questionnaire on April 24, 2006, indicating that he treats Plaintiff every two months for diabetes and describing Plaintiff's prognosis as poor (R. 322). Dr. Quililan indicated on the form that Plaintiff is not a malingerer and does not have emotional factors contributing to his symptoms or functional

limitations. He also indicated that Plaintiff's symptoms and functional limitations are consistent with his impairments, and opined that Plaintiff frequently experiences symptoms severe enough to interfere with attention and concentration, and has impending renal failure that may require dialysis in future.

The Plaintiff argues that the ALJ should have adopted Dr. Quililan's opinions that he is incapable of even low stress jobs, due to impending renal failure and possible need for renal dialysis, and that he could sit, stand, or walk for less than a total of two hours in an eight hour work day (R. 323). The regulations dictate that some medical opinions, such as ones that the claimant is disabled or unable to work, are not entitled to any special significance, as those are findings on issues that are left to the Commissioner's determination. *See* 20 C.F.R. §§ 404.1527(e). In this regard, the ALJ may ultimately determine not to adopt Dr. Quililan's opinions regarding Plaintiff's limitations, however, at this juncture I find insufficient support for the ALJ's decision to accord little weight to Dr. Quililan, the Plaintiff's only treating doctor.

On remand the ALJ should also reconsider the weight given to the two state agency consultants. The ALJ gave "considerable weight" to their consultants' opinions, reasoning that their opinions were consistent with the medical evidence, included specific reasons for their opinions, and considered Plaintiff's allegations about his symptoms and limitations. One consultant opined that Plaintiff can lift fifty pounds occasionally, twenty-five pounds frequently, stand for six hours in an eight hour day, and sit for six hours in an eight-hour day (R. 129-130). Another state agency consultant indicated Plaintiff is able to lift twenty pounds, occasionally and ten pounds frequently, and that he can sit or stand for six hours a day (R. 159). In light of the above discussion concerning Dr. Quililan's treatment notes, especially because Dr. Quililan continued to treat the Plaintiff for a

year or so after the consultants completed their evaluations, reconsideration of the opinions of these consultants is necessary.

   *2. non-exertional impairments*

The Plaintiff asserts the ALJ also erred in failing to properly evaluate his nonexertional impairments. Although the ALJ mentioned that he considered Plaintiff's "subjective complaints," he failed to discuss which "subjective complaints" he considered. Plaintiff suffers from a host of nonexertional impairments, including episodes of blacking out, neuropathy pain, manipulative limitations, headaches, nausea, and residual extremity pain from infections.

Under the Eleventh Circuit's three-part "pain standard," the Plaintiff must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Foote v. Chater,* 67 F.3d 1553, 1560-61 (11th Cir. 1995); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). Indeed, in certain instances, pain alone can be disabling even if unsupported by objective evidence. *Foote* at 1561.

The record is replete with the Plaintiff's account of neuropathy and other complications from uncontrolled blood sugars and blood pressure. *See* disability report, R 77-79. Lab work and Dr. Quililan's records confirm that Plaintiff suffers from these conditions. The ALJ concluded without a discussion that "While it is reasonable to conclude that the claimant should have some pain and/or limitations as a result of the effects of diabetes mellitus and hypertension, the evidence as a whole does not substantiate any cause for such debilitating pain, as described by the claimant, which would preclude all work activity." And, the ALJ opined that Plaintiff's activities (including driving)

7

contradict his alleged limitations. Review of the Plaintiff's records, however, shows that the ALJ mischaracterized the Plaintiff's daily activities. For example, while the ALJ mentioned driving as an activity Plaintiff can do, the Plaintiff actually testified that he once had a diabetic seizure behind the wheel and an accident (R. 344) and his disability report indicates that he does not drive under conditions when he feels bad (R. 79). Similarly, as to other activities the ALJ states Plaintiff can do (taking a walk, preparing food, house chores, and shopping), the Plaintiff's disability report, testimony, and medical records confirm that when his blood sugar drops, and it drops regularly, "everything is affected" and he is unable to do anything. As he wrote, "It is very difficult to work competently going through these blood sugar ups and downs actually its [sic] impossible (R. 79). Because the ALJ did not clearly evaluate the Plaintiff's multiple subjective complaints, as required by this circuit, a remand with instructions to do so is indicated.

### 3. *vocational expert testimony*

Finally, Plaintiff asserts that the ALJ should have consulted a vocational expert in order to determine what work he can perform. In light of the Plaintiff's nonexertional impairments, the ALJ is instructed on remand to consider whether a vocational expert consultation is needed, and to retain one if appropriate.

### *D. Conclusion*

For the reasons stated, it is

ORDERED:

1.  That the Commissioner's decision is REVERSED and the case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative

proceedings consistent with this Order.

2. That the Clerk of Court is directed to enter judgment for Plaintiff.

IT IS SO ORDERED at Tampa, Florida on February 13, 2008.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE